208 So.2d 437 (1968)
READING & BATES, INC., and Employers Liability Assurance Corporation
v.
James F. WHITTINGTON.
No. 44760.
Supreme Court of Mississippi.
March 18, 1968.
*438 Dan McCullen, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, for appellants.
Richard E. Stratton, III, Brookhaven, for appellee.
INZER, Justice.
This is a workmen's compensation case. Claimant James F. Whittington was injured on January 13, 1965, when he stepped into a hole, fell and broke his leg. The commission found that his injury was incidental to and in the scope of his employment and that his intoxication was not the proximate cause of the accident. He was awarded compensation. An appeal was taken to the Circuit Court of Lincoln County where a judgment was entered affirming the order of the commission. From that judgment this appeal is prosecuted.
Claimant, a thirty-three year old resident of Bogue Chitto, was employed on or about January 9, 1965, by appellant Reading & Bates as a roughneck to work on an oil well rig located about twenty miles west of Baton Rouge, Louisiana. He was told by the driller who employed him that his rate of pay would be $2.27 per hour and in addition, he would be paid $2 per day travel pay to cover his expense back and forth from his home to the oil rig. The other members of the crew with which claimant worked were residents of Mississippi and they each took turns driving and furnishing their car for transportation.
On January 13, 1965, the rig on which claimant was working was torn down and stacked. The work was completed several hours before claimant's shift was to have ended. The driller, Charles Gatlin, was claimant's superior and in charge of the crew. He directed the crew to leave the drill site and return home. On the way home in Gatlin's car, they stopped at a cafe in Baton Rouge and bought a fifth of Wild Turkey whisky. They proceeded on their way home and claimant and other passengers began drinking the whisky. At about 5:30 p.m. they stopped on a roadside near the Auburn community in Lincoln county to relieve themselves. Claimant walked behind the automobile and stepped into a hole causing him to fall and break his leg. He was assisted into the car and taken to the hospital in McComb. Claimant testified that he had only taken one drink prior to the accident but that after breaking his leg he drank a large part of the whisky to relieve the severe pain. When Dr. W.T. Mayer saw him at the hospital, he was highly intoxicated. Dr. Mayer rendered emergency treatment and sent claimant to Jackson where he was treated by Dr. T.S. Eddleman. His leg remained in a cast until May 19, 1965. Dr. Mayer thought claimant had reached maximum medical recovery on January 1, 1966, and felt that he was able to return to work although still partially disabled. On May 16, 1966, Dr. Eddleman was of the opinion that claimant's leg should continue to improve but it was still premature to make an evaluation of permanent disability.
*439 The employer defended the claim on two basic grounds: (1) that claimant was outside the course and scope of his employment when the accidental injury occurred, and (2) that the proximate cause of the injury was due to claimant's intoxication. These same contentions are urged on this appeal.
The first question for determination is whether claimant comes within an exception to the general rule that the hazards encountered by employees going to and returning from their work and off the employer's premises are not incident to employment and that accidents arising therefrom are not compensable. One of the recognized exceptions to this rule is where the employer furnishes the transportation or remunerates the employee for transportation. Aetna Finance Co. v. Bourgoin, 252 Miss. 852, 174 So.2d 495 (1965); Wallace v. Copiah County Lumber Co., 223 Miss. 90, 77 So.2d 316 (1955).
The evidence in this case establishes without question that when claimant was employed he was told that he would be paid $2.27 per hour for his work and $2 per day as travel pay. However, the employer contends that although they had paid the crews working on this well travel pay for the pay period immediately preceding the period in which claimant was employed, they had changed this procedure prior to the time claimant went to work and instead of paying travel pay they raised the hourly wage to $2.40 per hour to raise the pay of its employees to be in line with the wage scale in Louisiana. However, if true, this was an arbitrary decision by the employer and neither the driller, who employed claimant, nor other members of the crew were notified of such change. The first knowledge they had of it was at the end of the next pay period. When claimant received his pay voucher for the time he worked, instead of being paid $2 a day for promised travel pay, he received pay at the rate of $2.40 per hour. The attorney-referee was of the opinion that the employer tried to avoid its risk by disguising the employee's travel expense as a wage increase. The commission found that the evidence was sufficient to show that claimant came within the exception of the general rule and that this injury was incident to his employment. There is substantial evidence to support this finding. As a general rule, an employment contract between an employer and employee cannot arbitrarily be changed by the employer to the detriment of the employee without the knowledge and consent of the employee.
It is also urged that claimant was not within the scope of his employment because of deviation and abandonment. It is contended that since the employer had a rule against drinking on the drilling rig, claimant deviated from and abandoned his employment by drinking, and such drinking was responsible for his having to make a personal comfort mission on the side of the road. The commission rejected this contention. There is substantial evidence to support this finding. At the time of the injury claimant was on the usual route traveled by the crew to and from work. If it may be said that the stop at the cafe in Baton Rouge was a deviation, they returned to their usual route. While there was a rule against drinking on the drilling rig, there is no proof that there is any rule against drinking while traveling home from work. Claimant's immediate superior was driving the car and although he said he did not participate in the drinking of the whisky, he at least condoned the drinking by the others. It is no more than speculation that claimant's drinking caused him to have to answer the call of nature. Stops of this purpose are not unusual in the course of travel.
Appellants next contend that since the attorney-referee found that the evidence established claimant's intoxication was a contributing cause to his accidental injury under the provisions of Mississippi Code 1942 Annotated section 6998-04 (1952), the claim was not compensable. This statute provides among other things:
No compensation shall be payable if the intoxication of the employee was the proximate cause of the injury. *440 This statute places the burden of proof upon the employer (1) to prove that claimant was intoxicated at the time of the accident and (2) that his intoxication was the proximate cause of his injury. United States Fidelity & Guaranty Co. v. Collins, 231 Miss. 319, 95 So.2d 456, 96 So.2d 456 (1957).
The commission is the fact finding body and it was their duty to determine whether the claimant was intoxicated and if so, whether his intoxication was the proximate cause of the injuries. The evidence relative to the intoxication of claimant at the time he was injured is in conflict. According to the testimony of the witnesses who were in the car with him, claimant had taken only one or two drinks at the time the accident occurred and he was not intoxicated. The only other testimony that throws any light on whether he was intoxicated at the time of the accident is the testimony of Dr. Mayer. He testified that claimant was highly intoxicated when he saw him at the hospital and someone with him told him that claimant was drunk and got out of the car to vomit and fell and broke his leg. These persons were not identified by the doctor. The testimony of Mr. Gatlin, the driller, was contradicted to some extent by a statement he made to an insurance adjustor. Claimant admits that he was drunk at the time the doctor saw him, but explained that he drank heavily after the accident in an attempt to relieve the pain caused by his broken leg. The commission determined from the conflicting evidence that the employer had failed to meet the burden of proof and allowed compensation. There was substantial evidence to support this finding.
Finally, appellants urge that the commission was in error in the amount and extent of temporary partial benefits awarded. The commission ordered temporary total benefits to be paid until January 1, 1966, and that the employer pay compensation benefits at the rate of $12.80 per week beginning on January 2, 1966, for temporary partial disability until such time as claimant's permanent disability, if any, could be medically established. Dr. Mayer testified that he thought claimant would reach maximum medical recovery on January 1, 1966, but at the time of the hearing he testified that claimant was still partially disabled and that he could not state at that time whether he had a permanent disability of any kind as a result of the accident. He said, "I think it is a possibility that he may, again I think it is essential for this man at this time to be evaluated by an orthopedist." The doctor also stated when asked for an opinion as to the percentage of claimant's disability, if any, he stated, "I prefer not to make those, I like them done by the orthopedist."
On May 11, 1966, Dr. Thomas S. Eddleman examined claimant and made a report which by agreement was introduced in evidence. This statement in part said:
Impression is that the patient would improve with use of the leg and do not feel that he is ready for evaluation of his permanent disability. To return for further care to Dr. Mayer.
It is apparent from testimony of Dr. Mayer and statement of Dr. Eddleman that claimant had not at the time of the hearing reached maximum medical recovery. Claimant testified that he had tried to work but was unable. Under these circumstances, it was proper for the commission to continue temporary benefits until such time as the doctor can ascertain whether claimant has any permanent disability as a result of his accident. In fact, from the evidence in this case the commission could have allowed the continuance of the temporary total disability payments instead of allowing temporary partial disability benefits. However, the only question is whether the action of the commission relative to the allowance of temporary partial benefits under these circumstances was error. We hold that there was no error in this regard. The holding of the commission is affirmed and the case is remanded to the commission for a determination of whether there is any permanent disability, and if so, its extent.
*441 For the reasons stated, this case is affirmed and remanded to the commission.
Affirmed and remanded.
GILLESPIE, P.J., and BRADY, PATTERSON and ROBERTSON, JJ., concur.