JONES, Justice:
Dana K. Murphy was killed in an automobile accident in the early evening of January 29, 1966. He was an employee of appellee, and on June 30, 1966, the appellants, the widow and dependent children of the deceased, filed claim for benefits under the Workmen’s Compensation Law. The claim was controverted July 11, 1966.
Appellee asserted that, at the time of the accident, (1) the decedent was on a mission on his own behalf; (2) his death did not arise out of or in the course of his employment; (3) if he was on a mission for the employer, he departed therefrom; and (4) intoxication was the proximate cause of the accident and his death. On April 10, 1967, the Commission, with one member dissenting, affirmed the order of the attorney-referee, which was entered November 30, 1966, and which allowed death benefits to appellants.
From the Commission’s findings and order, the employer appealed to the Circuit Court of Plarrison County. That court, after hearing the appeal, reversed the Commission and dismissed the claim of appellants with prejudice, finding that: (1) decedent’s death did not arise out of and in the course of his employment; and (2) that the death of deceased was proximately caused by his intoxication. From this holding, the cause comes here.
On the original hearing the following was stipulated: appellants were the dependents of deceased; the date of birth of each; decedent’s weekly wage was $100; the decedent was killed in an automobile accident *775 on January 29, 1966; the abstract of hospital records would be introduced as a general exhibit.
The hospital record showed:
COMPLAINT (HISTORY) CC: Auto Accident
P. I.: Patient was brought- to the emergency room via ambulance at approximately 8:00 p. m. He is unable to give any definite history. At the present time he is quite dyspneic and complaining of shortness of breath and is thoroughly agitated. It felt that this patient had critical injuries on admission to the hospital due to the crushed chest, fractured sternum, and flail chest, probably complicated by cardiac contusion. He was also suffering from shock and probably had a cerebral concussion. It is felt that he died a respiratory death, probably from pulmonary congestion secondary to the crushed chest and also possibly due to failure of the respiratory center.
The final diagnosis was “crushed chest, right. Cardiac contusion. Cerebral concussion. Shock, Laceration forehead, severe. Fracture calvarium frontal bone.”
The doctor’s report was also introduced. In addition to reciting the injuries above, the report also gave the deceased’s respira-tions as approximately 36-40 per minute and blood pressure at 88-90/0.
Other pertinent facts were developed at the hearing. Deceased began work for the employer (a wholesale distributor of meat and related products) about November 1, 1965, as a route salesman. There were other such salesmen employees, but the decedent was the only one furnished a car for his use. He kept the car at his home. The others were paid weekly sums for use of their own car. Decedent’s route was along and near the Mississippi Coast. The expenses of the car were also paid by the company. The salesmen, including decedent, solicited orders and occasionally made deliveries. In addition to using the car over the route, decedent also used it in going to and from work. It was kept by him at his home in Gulfport. While the president of the employer testified that there was no requirement that decedent work on Sunday, there is evidence he sometimes took telephone orders at home and did paper work there. The president further said he had occasionally requested decedent to meet him at the office on Sunday, which request was always complied with.
It was shown that before decedent was employed, he had stated he could not or would not accept employment unless furnished a car. The car was an integral part of his contract.
The car and other vehicles of employer were serviced over weekends by the West Beach Service Station. The president testified he had made arrangements at this station for decedent to carry the car there for servicing on the Saturday the accident occurred and to pick it up Sunday afternoon. Why the witness made the arrangement this particular day is not shown. He said the deceased had attended to the servicing on three or four prior occasions. While the witness stated the deceased was directed to leave the car at the station until Sunday, he also testified he knew Mr. Murphy’s general practice, as stated by decedent’s wife, was to carry the car on Sunday to be serviced and there was no objection to such procedure. The witness made no exception as to this particular occasion. Thus, it is seen from the overall record that the car was furnished by the company to decedent, who used it, kept it; and cared for it as one would his own car.
Between 4:30 and 5:00 p. m. on the day of the accident, decedent with two other employees left the office to carry the car to be serviced. The two employees, who also had no certain hours to work, were told to go with Mr. Murphy to the service station. The two employees followed him to return him from the station. After leaving the decedent’s car at the station, the three employees went back to the plant to get some meat one had forgotten. The *776 president was leaving when they reached the plant, but he opened the door for them. The three then went to a bar named the “Circle Lounge” on West Railroad Street where they all drank whiskey. After about an hour and a half, the other two employees left and decedent remained at the lounge. One of them was supposed to return and pick Murphy up to drive him home. The two who left, DeChamp and West, drank some more at the home of West. After some time DeChamp left there.
In the meantime decedent had left Circle Lounge, obtained his car from the station, and was killed in the accident on what is called “Pass Road” — a direct route from the service station to his home. The way the accident happened, or why, is not disclosed by the record.
If the deceased had deviated, previously, he had returned and was headed toward home. The company furnished the car and had instructed another employee to carry him home, but it is not shown that he returned for such purpose. As to whether Mr. Murphy’s death arose out of and in the course of his employment, Dunn, Mississippi Workmen’s Compensation section 176 (2d ed. 1967) states:
As an exception to the general rule which excludes accidents in the course of transportation to and from work, it is held that an injury sustained in course of such transportation is compensable if the employer is obligated to provide transportation. This obligation may arise by express agreement or by implication from custom and practice. And it is immaterial to the application of the exception whether the employer supplies the vehicle or compensates the employee for the use of his own or some other vehicle and the exception is in no way dependent upon the method of travel. The exception may be rationalized in a number of ways, but the result is the same in all cases, since it is considered that the assumption of the obligation by the employer brings the transportation within the area of the risk assumed by the employer.
The same exception applies if the employer provides transportation which the employees may accept and customarily do accept pursuant to a practice which is beneficial, convenient or advantageous to both employer and employee. In such cases, it is said that the transportation is an incident of the employment although it may not technically be a part of the contract of hire in the sense that the employer is obligated to furnish or the employee is obligated to accept the facility.
But the trip must have a substantial work connection. Thus, it is held that where the trip is solely for the pleasure of the employee, it is not brought within the area of risk imposed upon the employer, merely because the transportation is furnished by the employer. In any event, the employee has the burden of proving that he comes within one of the exceptions to the general rule in such manner as to impose liability on the employer.
In Bryan Bros. Packing Co. v. Dependents of Murrah, 234 Miss. 494, 500, 106 So.2d 675, 677 (Miss.1958), it was stated:
We have held that a traveling employee as being in the course of his employment from the time he leaves home on a business trip until he returns and the employment covers both time and place of travel except in deviation cases or where he was on a personal mission or errand of his own, M. E. Badon Refrigeration Co. v. Badon, [231 Miss. 113] 95 So.2d 114; Dunn, Mississippi Workmen’s Compensation Law, Sec. 103.
In Majure et al. v. William H. Alsup & Associates, Inc., 216 Miss. 607, 63 So.2d 113, we held: “It is generally held that when it is shown that an employee was found dead at a place where his duties required him to be, or where *777 he might properly have been in the performance of his duties during the hours of his work, in the absence of evidence that he was not engaged in his master’s business, there is a presumption that the accident arose out of and in the course of the employment within the meaning of the compensation acts.”
The employer had agreed to furnish transportation to the decedent. Conceding that a deviation had occurred prior to the time of his death, he had returned therefrom and was on the direct route home, utilizing transportation that employer was obligated to furnish to him. His trip to the service station was in furtherance of the business. It was also shown he was on duty at practically all hours. There is no evidence of other transportation available from the the employer at this time. The president testified he had no objection to Murphy’s having the car serviced on Sunday. The employee was found seriously injured with no explanation of how the accident occurred.
Under these circumstances, we hold the above authorities on the exceptions to the general rule to be applicable and that the claimants met the burden of proof. There was substantial evidence to support the Commission’s holding that "Murphy had completed a temporary deviation and had returned to the course and scope of his employment.”
As to the intoxication of decedent, section V of the Workmen’s Compensation Act provides that “no compensation shall be payable if the intoxication of the employee was the proximate cause of the injury * * Miss.Code 1942 Ann. § 6998-04 (Supp.1966). The Commission held that the employer failed to prove Murphy’s intoxication was the proximate cause of the accident.
There is no question that decedent had been drinking, but the only evidence as to what happened is the stipulation “that Danna K. Murphy was killed in an automobile accident on January 29, 1966.” Appellee in its brief admits “It is not known exactly when and how the deceased met his death.” The burden is on the employer to show that the employee’s intoxication was the proximate cause of his injury. Reading & Bates, Inc. v. Whittington, Miss., 208 So.2d 437 (March 18, 1968); United States Fidelity & Guaranty Co. v. Collins, 231 Miss. 319, 95 So.2d 456, 96 So.2d 456 (1957).
Without knowing the facts of the accident, it is impossible to know the proximate cause. The Commission was amply justified by this record in holding that the employer had not met the burden of proof.
It is assigned as error that claimants should have been allowed the ten percent penalty under section 13(e) of the Act for failure to pay within fourteen days compensation payable without an award. See Miss. Code 1942 Ann. § 6998-19 (1952). Actual knowledge of the injuries and death of the employee was had by the company on the day of the accident and death. The claim was not controverted until July 1966 after the claimants had filed claim for benefits in June.
The Commission did not act on the request for penalties. However, as to whether the assessment of such penalty is mandatory or discretionary has been determined by this Court within the last several weeks. That the assessment of such penalty is mandatory where the facts coincide with those mentioned in the said subsection is the holding announced in Goasa & Son v. Goasa, Miss., 208 So.2d 575 (March 25, 1968).
There was substantial evidence to support the holding of the Commission; therefore, the judgment of the circuit court is reversed and, the judgment of the Commission reinstated with the fur *778 ther provision that the penalty provided by section 13(e) of the Act be assessed.
Reversed and remanded.
GILLESPIE, P. J., and RODGERS, BRADY and SMITH, JJ., concur.