GRIFFIS, J.,
for the Court.
¶ 1. Sanderson Farms, Inc. appeals the decision of the Mississippi Workers’ Compensation Commission, which granted Ralph Deering’s workers’ compensation claim. Deering was injured when he was attempting to load the wrapping foil in an Allpac machine, which is used to wrap packages of corn dogs. Sanderson Farms argues that Deering’s claim was not com-pensable under Mississippi Code Annotated Section 71-3-7 (Rev.2000). We find that the Commission’s decision was contrary to the overwhelming weight of the evidence presented. Therefore, we reverse and render.
FACTS
¶ 2. Deering was employed at Sanderson Farms where his job responsibilities were mainly in refrigeration maintenance. However, he also had other responsibilities, which included operating various machines. On November 14, 2000, Deering reported to work at approximately 2:30 p.m. At approximately 2:45 p.m., he began operating the Allpac machine. Around 3:10 p.m., while attempting to load the plastic foil (a cellophane type film) in the Allpac machine, Deering was injured when his left hand was caught in the machine.
¶ 3. After being treated for his injuries, a blood alcohol test was performed on Deering at approximately 5:04 p.m and 5:21 p.m. The test revealed that Deering had a blood alcohol level of .129 percent, which was above the legal limit.
¶ 4. Deering commenced a workers’ compensation claim against Sanderson Farms. Sanderson Farms claimed that Deering’s intoxication was the proximate cause of his injury; hence, Deering’s claim was not compensable under Mississippi Code Annotated Section 71-3-7 (Rev. 2000). Deering admitted to consuming alcohol prior to his accident but argues that alcohol was not the proximate cause of his injury.
¶ 5. The administrative law judge agreed with Deering and found that his intoxication was not the proximate cause of the injury. Deering was awarded benefits. The Commission affirmed the administrative law judge’s decision. The Circuit Court of Rankin County affirmed the decision of the Commission.
STANDARD OF REVIEW
¶ 6. The Commission is the ultimate finder of fact, and we must defer to its findings when they are supported by substantial evidence. Financial Institute Ins. Service v. Hoy, 770 So.2d 994, 997(¶ 6) (Miss.Ct.App.2000). To reverse the Commission’s decision, we must conclude that the “decision is erroneous and contrary to the weight of the evidence.” Id. “Substantial evidence, though not easily defined, means something more than just a ‘mere scintilla’ of evidence, [yet] it does not rise to the level of a ‘preponderance of the *1171 evidence.’ Substantial evidence can further be said to be evidence ‘affording a substantial basis of fact from which the fact in issue can be reasonably inferred.’ ” Id. quoting Delta CMI v. Speck, 586 So.2d 768, 773 (Miss.1991)(other citations omitted). We apply the de novo standard of review to matters of law. Spann v. Wal-Mart Stores, Inc., 700 So.2d 308 (¶ 12) (Miss.1997).
ANALYSIS
¶ 7. At issue here is Mississippi Code Annotated Section 71-3-7 (Rev.2000), which in relevant part provides:
Liability for payment of compensation. Compensation shall be payable for disability or death of an employee from injury or occupational disease arising out of and in the course of employment, without regard to fault as to the cause of the injury or occupational disease.... No compensation shall be payable if the intoxication of the employee was the proximate cause of the injury, or if it was the willful intention of the employee to injure or kill himself or another,
(emphasis added).
¶ 8. Sanderson Farms makes two separate arguments. First, it claims that Deering did not follow the normal procedures for loading foil into the Allpac machine. Next, Sanderson Farms claims that Deering’s intoxication impaired his critical judgment and ultimately caused the injury.

I. Did Deering follow the normal procedures for loading foil into the All-pac machine?

¶ 9. Sanderson Farms first argues that Deering did not follow the normal procedures in operating the Allpac machine. In support of its argument, Sanderson Farms relies on this Court’s ruling in Edwards v. World Wide Personnel Services, Inc., 843 So.2d 730 (Miss.Ct.App. 2002). Edwards was employed as a tree trimmer. Id. at 732(¶ 3). He fell from a tree and was injured. Id. at (¶ 4). Edwards was carried to an urgent care center for treatment. Id. at (¶ 5). There, he was tested for drugs and found to have marijuana in his system. Id. Edwards’ employer disputed the compensability of the work related injury based on his intoxication. Id.
¶ 10. Edwards’ supervisor testified that Edwards was not trimming the fallen tree according to normal tree trimming practice. Id. at 733(¶ 10). The supervisor testified that the normal practice for trimming a fallen tree that extended over a creek was to wait for the trackhoe operator to drag the tree on the bank for safe trimming. Id. Edwards did not wait; instead, he climbed out onto the tree and fell into the creek below. Id. The administrative law judge determined that Edwards trimmed the tree in an unsafe manner and held that his intoxication was the proximate cause of his injury. Id. at (¶ 13). We affirmed and held that the Commission was correct to deny benefits. Id. Sander-son Farms argues that, like the claimant in Edwards, Deering did not follow the proper procedures when loading the foil in the Allpac machine.
¶ 11. Deering argues, however, that Sanderson Farms’ reliance on Edwards is misplaced. He claims that he was unaware of the proper procedures due to inadequate training. Deering testified that he received very little training on the proper operation of the Allpac machine. He stated that his training consisted mainly of watching someone else run the machine. Deering also argues that he was still required to perform his duties as refrigerator repairman while being trained to work the Allpac machine. Deering stated that fifty to sixty percent of the time allotted for training was spent fulfilling his *1172 primary duties as refrigerator repairman. Moreover, Deering testified that he had never seen the safety procedures or a list of steps for the correct operation of the machine. He claimed he was shown a shortcut, and that this shortcut caused his injury. Thus, Deering argues that his injury was proximately caused by his inexperience and lack of training rather than by his intoxication.
¶ 12. However, upon review, the evidence is overwhelming that Deering knew and understood the proper way to operate the Allpac machine. Deering was employed as a master skill maintenance operator, the highest ranking maintenance position at Sanderson Farms. Deering admitted during testimony that the machine should be turned off when working on it. He admitted that he knew how to turn off the Allpac machine. Deering also acknowledged that the machine had safety guards in place to protect him and other employees from the machine’s moving parts. Although Deering understood that he was to turn off all equipment and keep safety guards in place before working with the equipment, Deering left the All-pac machine running and circumvented the safety guards. As a result, Deering’s hand was caught in the machine, causing injury.
¶ 13. Deering also testified that it is necessary for a machine to be turned off during any maintenance. In fact, he stated that he was aware that a machine should be turned off before inserting his hand in any location where there were moving parts. Deering also testified that he was aware that the guards on a machine were there to protect the worker from moving parts. Even more telling, however, Deering agreed that “you didn’t have to stick your hand under the cover, the guard to load the film.”
¶ 14. Robert Conn, Deering’s supervisor, and Bruce Chostner, the maintenance manager, both testified that they witnessed Deering load the foil in the Allpac machine without any problems on prior occasions. Conn testified that the machine had a guard that acted as a safety switch, which would prevent the machine from running when it was lifted. Conn also testified that there was no reason to place your hand inside the machine when it was running.
¶ 15. Accordingly, we find that the overwhelming evidence indicates that Deering knew how to operate the Allpac machine in a proper manner and he was not doing so at the time of his injury.

II. Was Deering’s intoxication the proximate cause of his injury ?

¶ 16. Sanderson Farms next argues that Deering’s intoxication proximately caused the accident which led to his injury. To support this argument, Sander-son Farms presented the expert testimony of Dr. William J. George, a Professor of Pharmacology and Director of Toxicology at Tulane School of Medicine.
¶ 17. Dr. George’s testimony relied on several facts. The time of the accident was approximately 3:10 p.m. The alcohol tests were performed at 5:04 p.m. and 5:21 p.m. Dr. George testified that Deering’s blood alcohol level, at the time of the accident, would have been .160 percent. Dr. George testified that a person begins to see significant effects of increased confidence, personality and mood changes at a blood alcohol level of .05 percent. Then, at a blood alcohol level of .07 or .08 percent, a person begins to have changes in critical judgment. At .10 percent, in addition to the effects already mentioned, a person begins to have motor incoordination and motor impairment. At .15 percent, a person begins to have double vision. Dr. George testified that since Deering’s blood *1173 alcohol level was approximately .160, at the time of the accident, he was suffering from each of these effects.
¶ 18. Dr. George explained what he meant by “changes in critical judgment.” “It is how one views the consequences of one’s behavior... .You begin to think that you are stronger and better, et cetera, than you normally — than you really are, perhaps... .And ....some people think they can achieve more than they really have in the past ... You don’t view a situation as being dangerous perhaps as what it may be. You don’t view a task as being more difficult to achieve than it really is.” Dr. George concluded that, in his opinion, Deering’s injury was proximately caused by his intoxication.
¶ 19. To deny workers compensation benefits, the claimant’s intoxication must be the proximate cause of the accident and not just a contributing factor. Murphy v. Jac-See Packing Co., 208 So.2d 773, 777 (Miss.1968). In reviewing the evidence, the administrative law judge gave much weight to the fact that at the time of his injury, Deering had only been working on the Allpac machine for a short period of time and was therefore unfamiliar with the machine. This finding was clearly contrary to the overwhelming weight of the evidence.
¶ 20. We have reviewed the record, which includes a videotape of the Allpac machine in operation. Deering clearly was injured because he failed to properly operate the machine. Deering’s level of intoxication was significant. Deering’s intoxication was so significant, Dr. George opined that Deering’s injury was proximately caused by his intoxication.
¶ 21. Accordingly, we reverse the decision of the Circuit Court of Rankin County and the Mississippi Workers’ Compensation Commission and render a decision denying benefits pursuant to Mississippi Code Annotated Section 71-3-7 (Rev. 2000).
¶ 22. THE JUDGMENT OP THE CIRCUIT COURT OF RANKIN COUNTY TO AFFIRM THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS HEREBY REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, BARNES AND ISHEE, JJ. CONCUR. KING, C.J., NOT PARTICIPATING.