CARLTON, J.,
for the Court:
¶ 1. Kenneth Payton filed a claim for benefits with the Mississippi Workers’ Compensation Commission (“Commission”) for injuries he claimed he suffered while working for Rod Cooke Construction Company Inc. (“Cooke”). The Commission denied Payton’s request for benefits. On appeal, Payton argues that the Commission’s order is arbitrary and capricious, unsupported by substantial evidence, and contrary to law. After reviewing the record, we find that the Commission’s decision was supported by substantial evidence. Therefore, we affirm the order of the Commission.
SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. On November 20, 2008, Payton worked as a general laborer for Patterson Construction Company (“Patterson”). Patterson was a subcontractor for Cooke, the general contractor, on a construction project in Long Beach, Mississippi. Pay-ton testified that on the morning of November 20, 2008, his duties included setting up scaffolds for the masons and providing the masons with cement and blocks. Around noon, Payton’s landlady drove to the work site and picked up Payton and some of his coworkers in her vehicle for lunch. On their way home to eat lunch, they stopped at a convenience store, where Payton purchased two twenty-four-ounce Steel Reserve beers. Pay-ton later admitted at the hearing before the administrative judge (AJ) to drinking one twenty-four-ounce beer while eating lunch; however, he claimed he gave the other twenty-four-ounce beer to his coworker. After lunch, Payton returned to the work site at approximately 1:00 p.m.
¶ 3. Around 3:00 p.m. that same day, Payton sustained an injury when he fell while cleaning a wall that he estimated was approximately twelve feet high and eight inches wide.[1] According to Payton, he climbed onto the top of the wall from a scaffold and then crawled along the top of the wall, leaning over to wipe away splashed cement using a wet sponge. Pay-ton testified that on prior occasions, he had successfully cleaned the walls using this method without incident. However, Pay-ton later testified that on prior occasions, he “did not have to be on the wall” because he used scaffolds while cleaning the walls.
¶ 4. Payton reported the injury to his immediate supervisor, and Payton asserts his supervisor told him that he likely had suffered a sprained ankle and instructed him to go home. Payton’s landlady transported Payton home sometime between 3:30 p.m. and 3:45 p.m. Payton testified at the hearing before the AJ that once home, he drank approximately two and a half to three more beers[2] while waiting for his brother to arrive home.[3] Payton’s brother arrived home at approximately 4:30 p.m., and his brother then drove Payton to the hospital. Payton acknowledged at the hearing that in his deposition testimony, he initially denied having anything to drink *913 on the date of the accident other than the beers he consumed after the injury.
¶ 5. Payton was initially seen in the emergency department of Memorial Hospital in Gulfport. While at the hospital, an alcohol test was conducted on blood obtained from Payton. Ultimately, Payton was diagnosed with a comminuted left tibia pilón fracture and underwent closed reduction and application of an external fixator.
¶ 6. Dr. William J. George, an expert in the field of toxicology and pharmacology, opined that Payton was significantly impaired and intoxicated at the time of his injury. At the hearing of this matter, Dr. George testified that Payton’s blood-alcohol level at the time of the accident was 200 milligrams percent. Dr. George further testified as follows:
Q: So, in your opinion[,] would consuming one 24-ounce beer between 12:00 and 1[:00] and two [and a] half to three 12[-]ounce beers after the accident but before going to the hospital, produce the blood[-]alcohol level shown on the testing?
A: Not with one, no.
[[Image here]]
Q: Let me ask you this. There has been a lot of testimony about what had been consumed prior to the accident. Based upon the blood test performed in the hospital around 7[:00] on the date of the accident, is Mr. Payton’s testimony consistent with the results of those tests in that he consumed one 24-ounce beer prior the accident and two [and a] half to three beers after the accident? Is that testimony consistent with the blood levels found at the hospital?
A: No. The blood levels found in the hospital were nearly, if you will, double what the level would have been based upon the testimony he gave.... If. he only has one Steel Reserve, he would never get there.
Dr. George found that Payton’s blood-alcohol level was consistent with a scenario where Payton had consumed two twenty-four ounce beers between 12:00 and 1:00 p.m., which Payton admittedly purchased that day.
¶ 7. On December 12, 2008, Payton filed a petition to controvert with the Commission, alleging that on November 20, 2008, he had received a compensable work-related injury to his left ankle while employed by Patterson. On January 14, 2009, Pay-ton filed an amended petition to controvert, naming Cooke as the appropriate employer.[4] Cooke denied compensability and paid no workers’ compensation benefits to Payton.
¶ 8. On August 5, 2010, a hearing took place before an AJ in Gulfport, Mississippi. The AJ determined that the sole issue for determination was whether Payton was intoxicated at the time of his accident/injury and, if so, whether his intoxication constituted the proximate cause of the injury to his left ankle. The AJ ultimately found that while Payton may have been intoxicated at the time of his admission to the hospital emergency room, it was possible that Payton was not intoxicated at the time of the injury. Thus, the AJ concluded that Payton sustained a compensable work-related injury and awarded benefits for such injury to Payton.
¶ 9. On November 10, 2010, Cooke appealed the AJ’s order to the Commission. The Commission entered its decision on July 1, 2011, reversing the decision of the AJ and denying Payton’s claim.
¶ 10. Payton now appeals.
*914 STANDARD OF REVIEW
¶ 11. “In reviewing appeals from rulings of the Workers’ Compensation Commission, this Court must resolve whether a quantum of credible evidence supports the Commission’s decision.” Union Camp Corp. v. Hall, 955 So.2d 363, 368 (¶ 23) (Miss.Ct.App.2006). “We may not resolve conflicts in the evidence. Rather, we presume that the trier of fact, the Commission, resolved all conflicts in evidence.” Id. (internal citation omitted). We employ a highly deferential standard of review. Id. “Essentially, we will overturn the Commission if its decision was arbitrary and capricious.” Id. “We will also overturn the Commission if its decision was based on an error of law or an unsupported finding of fact.” Id. In evaluating the appeal in this case, we acknowledge that the Commission remains the fact-finder.
DISCUSSION
¶ 12. Payton argues that the Commission erroneously reversed the AJ’s decision and denied him workers’ compensation benefits to which he should be entitled. Payton claims that the evidence clearly indicates that he sustained an injury while in the course and scope of his employment, and that Cooke failed to prove Payton’s intoxication at the time of his fall and that this intoxication was the proximate cause of the accident.
¶ 13. Mississippi Code Annotated section 71-3-7 (Supp.2012) states:
Compensation shall be payable for disability or death of an employee from injury or occupational disease arising out of and in the course of employment, without regard to fault as to the cause of the injury or occupational disease.
[[Image here]]
No compensation shall be payable if the use of drugs illegally, or the use of a valid prescription medication(s) taken contrary to the prescriber’s instructions and/or contrary to label warnings, or intoxication due to the use of alcohol of the employee was the proximate cause of the injury, or if it was the willful intention of the employee to injure or kill himself or another.
(Emphasis added). “As such, the defense of intoxication is a bar to recovery.” Edwards v. World Wide Pers. Servs., Inc., 843 So.2d 730, 732 (¶ 7) (Miss.Ct.App.2002).
¶ 14. Mississippi precedent recognizes that “[t]o deny workers[’] compensation benefits, the claimant’s intoxication must be the proximate cause of the accident and not just a contributing factor.” Sanderson Farms, Inc. v. Deering, 909 So.2d 1169, 1173 (¶ 19) (Miss.Ct.App.2005). “The burden is on the employer to show that the employee’s intoxication was the proximate cause of his injury.” Edwards, 843 So.2d at 733 (¶ 11) (citing Murphy v. Jac-See Packing Co., 208 So.2d 773, 777 (Miss.1968)).
¶ 15. The Commission’s order reversed the AJ’s award of workers’ compensation benefits to Payton. The Commission found as follows:
Based on the evidence as a whole, the Commission finds that the testimony of Dr. George is the most credible testimony on the issue of Claimant’s intoxication at the time of his injury. The Claimant previously denied having consumed any alcohol prior to the accident on the date of injury. Only when confronted did he subsequently admit to purchasing two 24-ounce beers shortly before the injury, an amount that was sufficient to result in the blood[-]alcohol level established by Dr. George’s findings. Although the Claimant testified that he only drank one of the 24-ounce beers prior to the injury, Dr. George *915 found that the Claimant was intoxicated at the time of his injury, and he further found that one 24-ounce beer alone would not have been sufficient to result in the Claimant’s blood[-]alcohol level at the time of [the] injury. Based on the expert testimony of Dr. George, and the lack of credibility in the testimony of the Claimant, the Commission finds that the Claimant was intoxicated at the time of his injury to a level that his balance was impaired, and he fell while failing to perform his work in a safe manner.... [T]he Claimant’s intoxication was the proximate cause of his injury, and thus the Commission finds that the Employer/Carrier have met their burden of proof on the affirmative defense of intoxication. This claim is hereby denied and dismiss[ed] accordingly.
¶ 16. This Court recognizes the limited standard of review that appellate courts utilize when reviewing factual findings of the Commission. Hall, 955 So.2d at 368 (¶ 23). We recognize that this Court is not the trier of fact, and, absent any error of law, we only reverse where the Commission’s decision lacks the requisite eviden-tiary support of substantial evidence. Id. In this case, the record demonstrates that substantial evidence exists to support the Commission’s factual finding that Payton’s intoxication was the proximate cause of his injury. See Miss.Code Ann. § 71-3-7; see, e.g., Deering, 909 So.2d at 1173 (¶¶ 19-21) (finding that the evidence did not support the Commission’s finding that the claimant’s intoxication was not the proximate cause of his injury); Edwards, 843 So.2d at 733-34 (¶ 13) (affirming the denial of benefits to the claimant because his intoxication constituted the cause of his injury). As such, we find no error in the Commission’s decision to deny benefits to Payton.
CONCLUSION
¶ 17. This Court is of the opinion that the Commission’s decision was supported by substantial evidence. Therefore, we affirm the order of the Commission.
¶ 18. THE JUDGMENT OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J., NOT PARTICIPATING.

.Payton testified that after the walls are erected using blocks and mortar, cement is then poured into the hollow spaces of the blocks from the top using a hose. As a result, wet cement will sometimes splash or splatter on the sides of the concrete-block walls near the top and must be wiped away while still wet.

. Payton testified that he drank between one-half and three-quarters of his third beer which he did not finish before leaving to go to the hospital.

. Payton testified that before the date of his injury, he regularly consumed a six-pack of beer every day, some days drinking as much as a twelve-pack of beer.

. The AJ’s order notes that Patterson was the subcontractor of Cooke, and that Patterson was uninsured at the time of Payton’s alleged injury.